IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KATHY WARNER-STANTON,              *

     Plaintiff,              *

vs.                                 *

                             CASE NO. 4:04-CV-83 (CDL)

BLUE CROSS and BLUE SHIELD of      *
GEORGIA, INC.,
                         *

     Defendant.              *

                         *

O R D E R

Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 22). For the following reasons, Defendant's motion is granted as to all of Plaintiff's claims.

BACKGROUND

Plaintiff, Kathy Warner-Stanton, an African-American female, alleges that Defendant, her former employer, discriminated against her during her employment based upon her race and/or gender and ultimately fired her when she complained of such discrimination. Defendant denies Plaintiff's allegations and contends that no genuine issues of material fact exist to be tried, thus entitling it to summary judgment.

Plaintiff was hired by Defendant Blue Cross Blue Shield of Georgia ("BCBS") as a DB2 Database Systems Administrator ("DB2/DBA") on February 12, 2001. On May 1, 2001, WellPoint, Inc., acquired BCBS. After the acquisition, Plaintiff was told that her new title

would be Database Administrator which, under a new salary grade system, carries a salary grade of 40.   In August 2001, BCBS reorganized its Information Technology Department in order to "bring consistency to job titles, salary grades, and job duties nationwide." (Def.'s Statement of Undisputed Material Facts ¶ 6.)   During this reorganization or "remapping," Plaintiff's title was changed to Senior Database Analyst and her pay grade was reduced to 39.   This change did not alter her salary, but made her ineligible for management bonuses.   The only other former DB2/DBA in the Columbus office, Stephan Malinowski, a Caucasian male, was also remapped to Senior Database Analyst.

Plaintiff's supervisor during the remapping process was Shep James.   In April 2003, Sam Kuntz became Plaintiff's supervisor. Plaintiff asked Kuntz several times to have her title of Database Administrator restored.   Kuntz told Plaintiff that she could not be remapped back to Database Administrator.   Instead, in order to regain the title Database Administrator, Plaintiff would have to be promoted.  Additionally, Kuntz explained that Plaintiff would have to be a Senior Database Analyst under Kuntz for at least a year before she could be considered for a promotion.   Plaintiff went to Kuntz's manager, Terry Burnett, to request an immediate promotion, but he denied her request and reaffirmed Kuntz's statement that Plaintiff would have to be under Kuntz for a year before she could be promoted. Plaintiff claims that this failure to promote was discriminatory.

2

Additionally, Plaintiff claims that while working for Kuntz she was routinely denied comp time and flex time. Plaintiff maintains that this denial of comp and flex time was discrimination. Plaintiff admits that BCBS had no company policy permitting comp time. Plaintiff also admits that she was given some comp and flex time. Furthermore, Plaintiff admits that Malinowski was also denied comp and flex time.[1]

In October 2003, Plaintiff filed her initial charges of discrimination internally. BCBS investigated and found no discrimination and no violation of any company policy. On December 1, 2003, Stephanie Yim, who is stationed in California, became Plaintiff's supervisor. Plaintiff alleges that Yim also denied her requests for comp and flex time. Furthermore, Yim denied Plaintiff's request to attend a training seminar in February 2004 and provided her with what Plaintiff considered to be a negative performance evaluation for the year 2003 that caused Plaintiff to lose some compensation and also contributed to her termination. Plaintiff alleges that Yim's conduct was discriminatory.

On February 20, 2004, Plaintiff filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In that charge, Plaintiff claimed that Defendant's failure

---

[1]Defendant had no official policy for "comp time." However, it appears that the parties agree that generally "comp time" means time that an employee can earn and then use to take off additional time from work. "Flex time" is defined by the BCBS employee handbook to allow for variable start times as approved by the supervisor.

to promote her was discriminatory.  Plaintiff further alleges that she was "harassed" by her supervisors.[2]  Neither Yim nor Kuntz were aware of the EEOC charge until March 2004.  On March 19, 2004, Plaintiff amended her EEOC complaint to include retaliation.

On July 16, 2004 BCBS experienced a serious outage that caused BCBS to provide substandard data to an internal client.  Yim claims that Plaintiff caused the outage and also failed to report the problem in a timely manner.  Plaintiff was ultimately fired on August 9, 2004.  Defendant maintains that Plaintiff was fired because of her involvement in the outage, her failure to report the outage, and her failure to improve her performance in accordance with a previous evaluation by Yim.  Plaintiff claims that the only reason she was given for her termination in her exit interview was that she was fired because of poor performance.  On August 12, 2004, Plaintiff filed her final charge of discrimination with the EEOC claiming retaliatory discharge.

Plaintiff filed suit pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 ("§ 1981") claiming that Defendant discriminated against her based upon her race and gender when it failed to promote her, subjected her to disparate treatment, and discharged her.  Plaintiff further claims that Defendant unlawfully retaliated against her by firing her when

---

[2]Plaintiff asserts no claim for sexual "harassment" by a male supervisor or fellow employee.  The "harassment" she refers to is being subjected to disparate treatment based on her race and gender.

she complained of this discrimination and when she filed charges of discrimination with the EEOC. Plaintiff's complaint also included a state law claim under Georgia law for the intentional infliction of emotional distress. Plaintiff has now abandoned her claims for failure to promote, discriminatory discharge, and the intentional infliction of emotional distress. Therefore, summary judgment for the Defendant is granted on each of Plaintiff's abandoned claims.

The following claims remain pending for resolution: 1) Plaintiff's disparate treatment claim arising from the alleged denial of comp and flex time; 2) Plaintiff's disparate treatment claim arising from Yim's adverse performance evaluation; 3) Plaintiff's disparate treatment claim arising from Yim's denial of Plaintiff's request to attend a training program; and 4) Plaintiff's retaliatory discharge claim.

DISCUSSION

**I. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to

"establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court may draw inferences from undisputed facts. The Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draws all justifiable inferences in his favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

## II.  Disparate Treatment

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Plaintiff claims that she was treated less favorably than other employees because of her race in violation of both Title VII and § 1981 and because of her gender in violation of Title VII.  In order to prevail on her disparate treatment claims, Plaintiff must show that she was discriminated against because of her race or gender and that this discrimination resulted in an adverse employment action.[3]  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citation omitted).

### A.  *Prima Facie* Case

In order to show discrimination, Plaintiff has relied upon circumstantial evidence.  "When a plaintiff attempts to prove intentional discrimination in violation of Title VII using circumstantial evidence, [the Eleventh Circuit] appl[ies] the now familiar shifting burden framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)*."* *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999)(internal citation omitted).  Under *McDonnell Douglas*,

---

[3]The same analysis is applied for disparate treatment actions under both Title VII and § 1981.  *See Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994).

> [T]he plaintiff has the initial burden of establishing a
> prima facie case of discrimination.  If he meets that
> burden, then an inference arises that the challenged action
> was motivated by a discriminatory intent.  The burden then
> shifts to the employer to 'articulate' a legitimate, non-
> discriminatory reason for its action.  If the employer
> successfully articulates such a reason, then the burden
> shifts back to the plaintiff to show that the proffered
> reason is really pretext for unlawful discrimination.

*Id.* (internal quotations and citations omitted).  A *prima facie* case

of disparate treatment is established where a plaintiff can show that

(1) she is a member of a protected class; (2) she was qualified for

her job; (3) she was subjected to an adverse employment action; and

(4) similarly situated employees were treated more favorably.

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citation

omitted).  Defendant has admitted that Plaintiff is a member of two

protected classes--she is an African-American female.  Defendant also

admits that she was qualified for her position as Senior Database

Analyst.  Therefore, at issue for this Court is whether Plaintiff

suffered from an adverse employment action and was treated less

favorably than similarly situated employees.

### 1.  Adverse Employment Action

Plaintiff argues that four separate events constitute adverse

employment actions.  First, Plaintiff argues that her negative

performance evaluation that resulted in a denial of Plaintiff's merit

increase for 2004 is an adverse employment action.  Defendant admits,

and the Court agrees, that this does constitute an adverse employment

action.  *See Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239

(11th Cir. 2001).  Plaintiff also argues that the denial of comp and flex time and the refusal to permit training are adverse employment actions.  The Court will assume, without deciding, that these actions constitute adverse employment actions.[4]

## 2.  Similarly Situated Employees

In order to show a *prima facie* case of disparate treatment, Plaintiff must also show that similarly situated employees were treated more favorably than her with respect to the alleged adverse employment actions.  It is the plaintiff's burden to establish that similarly situated employees were treated differently.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 249 (1981).  A comparator must be "similarly situated in all relevant aspects" to Plaintiff.  *Holifield*, 115 F.3d at 1562 (11th Cir. 1997).  In other words, Plaintiff must be "matched with a person or persons who have very similar job-related characteristics and who are in a similar

---

[4]There is a strong argument that these actions do not rise to the level of adverse employment actions.  "[N]ot all conduct by an employer negatively affecting an employee constitutes [an] adverse employment action."  *Davis,* 245 F.3d at 1238 (citation omitted).  The denial of *some* comp and flex time does not likely constitute a "*serious and material* change in the terms, conditions, or privileges of employment."  *Id.* at 1239.  Additionally, the denial of one training opportunity where the employee did not ask for permission to attend the training and it was, according to the company, not relevant to her job does not likely constitute an adverse employment action.  Furthermore, an "employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  *Id.* at 1240 (citation omitted).  A reasonable person would likely expect that her requests for comp time, flex time, and training would not always be granted--especially in a company that does not have a formal comp time policy.

situation" to Plaintiff.  *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991).

Plaintiff alleges that Yim discriminated against her when she gave her a negative performance evaluation for 2003.  In January 2004, Yim, Plaintiff's supervisor at the time of the evaluation, and Kuntz, Plaintiff's supervisor for most of 2003, prepared a year 2003 performance appraisal for Plaintiff.  Kuntz provided Yim with the template of goals and objectives.  Yim updated it and added ratings. Kuntz testified that he would have given Plaintiff an overall rating of "3-Meets Performance Requirements".  Yim, however, gave Plaintiff a rating of "2-Needs Development," which prevented Plaintiff from receiving her annual merit pay increase.  Yim based her evaluation of Plaintiff on her interactions with Plaintiff for only a one month period--December 2003 through January 2004.

Plaintiff did not receive a copy of her performance evaluation until March 15, 2004.  Plaintiff claims that she attempted to see her evaluation multiple times and was denied until March.  Yim claims that she arranged meetings with Plaintiff at least three separate times to discuss the performance appraisal.  Each time Plaintiff cancelled the meeting.  Therefore, after the third time, Yim explained that Human Resources sent Plaintiff a soft copy of her performance appraisal.  Although Plaintiff did not receive a copy of her performance appraisal until March, she was given notice that she was not meeting Yim's performance expectations on February 10, 2004

when she was put on a sixty-day Performance Improvement Plan ("PIP"). The PIP explained that while Plaintiff had been warned in January that she was not meeting expectations, her performance continued to be substandard. Therefore, Plaintiff was given twelve goals that she was expected to meet during the sixty-day period. Plaintiff was also told in the PIP that if she did not "demonstrate immediate and sustained improvement" she could be subject to corrective action "including termination."

Notwithstanding Plaintiff's complaints that Yim's performance evaluation constituted disparate treatment based upon race and/or gender, Plaintiff has failed to identify a comparator who was treated more favorably than her with respect to the "2" rating received on her performance appraisal. The obvious potential comparator is Stephan Malinowski. Malinowski, a white male, was under the same supervisor as Plaintiff, was in the same group with Plaintiff, had the same job title and pay grade as Plaintiff, and had the same general job responsibilities as Plaintiff. Malinowski, however, was also given a "2" rating on his performance appraisal. Therefore, since Plaintiff's comparator was treated exactly the same as Plaintiff with regard to the performance appraisal, she cannot establish a *prima facie* case of discrimination on this claim, and summary judgment is proper for BCBS.

Plaintiff next argues that she was discriminated against based upon Yim's denial of one training opportunity. Plaintiff emailed Yim

11

in California on February 24, 2004, to inform her that Plaintiff was in a training class. Plaintiff had not requested permission to attend the training. Plaintiff claims that two seats had become available on the first day of the class. Plaintiff and Malinowski went to the class and then asked for approval. Plaintiff did not give Yim a class description or tell Yim that she could remain connected to the BCBS mainframe in order to do her work during the training. Yim declined to approve the training for either Plaintiff or Malinowski because she did not believe that the training was relevant to their job and because she did not know that they could continue to work during class. Plaintiff claims that this was discrimination.

In support of her disparate treatment training claim, Plaintiff points to three possible comparators—Malinkowski, Terry Jackson, and Tim Fansler, all white males. However, Plaintiff has presented no evidence as to any training that was allowed for Jackson and Fansler. Therefore, they could not possibly be valid comparators for Plaintiff's denial of training claim. Moreover, the only possible comparator, Malinkowski, was denied the same exact training that Plaintiff was denied. Plaintiff's disparate treatment training claim is frivolous. Defendant is entitled to summary judgment on this claim.

Regarding her disparate treatment claim arising from the denial of flex and comp time, Plaintiff claims that she was denied such time

while others were allowed to take such time.  She alleges that this amounts to unlawful discrimination.  In support of this claim, Plaintiff also points to Malinkowski, Jackson, and Fansler as her comparators.

Neither Jackson nor Fansler were supervised by Yim.  Therefore, Plaintiff argues that they could only be comparators for actions that occurred while they were supervised by Kuntz.  Malinowski was transferred from Kuntz to Yim along with the Plaintiff, but the Plaintiff admits that Malinowski was denied comp time and flex time in a similar fashion to Plaintiff.  Consequently, Malinowski is not a similarly situated employee who was treated more favorably than Plaintiff.

The issue therefore is narrowed to whether Fansler and Jackson were similarly situated employees who were treated more favorably than Plaintiff by BCBS in regard to comp and/or flex time. Typically, in order to determine whether employees are similarly situated, the Court would look to whether they have "very similar job-related characteristics," *MacPherson*, 922 F.2d at 774, and "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield*, 115 F.3d at 1562.  Here, however, there is no issue of whether Plaintiff and another employee were both disciplined in the same manner.  Instead, the question is whether Plaintiff and other employees participated in the same behavior and received the same

13

benefits (comp and/or flex time).[5]  Fansler was a Senior Systems Programmer who worked on transaction processing.  Jackson was a Database Analyst 2--a grade lower than Plaintiff and in a support role for Plaintiff.  Plaintiff was a Senior Database Analyst who worked on problems with the mainframe and data base.  Therefore, the Court is not convinced that Plaintiff, Fansler, and Jackson had "very similar job-related characteristics."

Even if Fansler and Jackson had sufficiently similar duties to be valid comparators, Plaintiff has produced no evidence that they were treated more favorably than Plaintiff with regard to comp time.  First, the only evidence that Plaintiff has presented regarding Jackson's grant of comp time is either hearsay or insufficient to show that Jackson was treated more favorably than Plaintiff.[6]  For example, Malinowski stated that he noticed Jackson would be out of work, but did not know the reason for this absence.  (Malinowski Dep. 17:3-6.)  This is not evidence that Jackson was off on comp time.  Furthermore, Fansler says that he could only remember being given permission to take comp time once.  After that, Fansler explained, he would take comp time without request or authorization.  (Fansler Dep.

---

[5]As previously explained, the Court has serious doubts as to whether the alleged denial of flex and/or comp time under the circumstances in this case amounts to an adverse employment action.  The Court assumes for purposes of this Order that a genuine issue of material fact exists as to whether such a denial amounts to an adverse employment action.

[6]Hearsay evidence may not be considered on motions for summary judgment unless it can be reduced to an admissible form.  *See Macuba v. Deboer,* 193 F.3d 1316, 1324 (11th Cir. 1999).

23:8-24:1.)  Plaintiff stated that she would ask for comp time and either her request would be denied or she would be harassed for taking the time.  Plaintiff does not argue or present evidence that she was always denied comp time or that Fansler and Jackson's requests for comp time were always granted.  Moreover, Plaintiff admits that BCBS had no formal comp time policy, and that it was solely at the discretion of the supervisor.  Kuntz also denies rejecting Plaintiff's requests for comp time.  Therefore, Plaintiff has failed to present a *prima facie* case of discrimination based on the denial of comp time because she cannot show that similarly situated employees were treated differently than her.  Summary judgment is proper for BCBS on this claim.

Plaintiff has, however, presented some evidence from which a reasonable jury could conclude that Fansler was allowed to work flex time when she was not.  Defendant acknowledges that Fansler took some flex time.  Plaintiff claims that she was not permitted to take flex time.  Therefore, although the Court has serious doubts as to whether Fansler is a valid comparator, the Court finds for purposes of this Order that Plaintiff has established a *prima facie* case of discrimination with regard to the denial of flex time.

### B.  Legitimate Non-discriminatory Reason and Pretext

After Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the employment action.

*Burdine*, 450 U.S. at 254.  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Id.*  The plaintiff must then show that the legitimate, non-discriminatory reason presented by the defendant is pretext.  "This burden [] merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination."  *Id.* at 255.

In support of her claim, Plaintiff points to one time when her request for flex time was denied.  Plaintiff alleges that she asked Kuntz to allow her to leave early one day a week.  Kuntz understood her request to be a request to leave work an hour early *every* day. Kuntz explained that while BCBS does allow flex schedules, employees cannot leave every day at a time when many clients may still require work.  Therefore, Kuntz initially denied Plaintiff's request because he misunderstood her request as seeking to leave early every day. Once BCBS understood Plaintiff's request to be to leave early only one day a week, it granted her request for flex time.  Defendant has therefore satisfied its burden of producing a legitimate, non-discriminatory reason for initially denying Plaintiff's request for flex time.

In response, Plaintiff has presented no evidence to show that this non-discriminatory reason was pretextual.  Instead, Plaintiff admits that once she explained to Human Resources that she needed

16

time off only one day a week, she was granted the flex time. Therefore, summary judgment is proper for the Defendant on Plaintiff's disparate treatment flex time claim.

## II. Retaliation

For a claim of retaliation, like disparate treatment, the plaintiff must first establish a *prima facie* case. If the plaintiff carries that burden, the "employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The plaintiff can then still succeed if she can prove by a "preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct . . . ." *Id.*

In order to establish a *prima facie* case of retaliation, Plaintiff must show: "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Holifield*, 115 F.3d at 1567. The plaintiff does not have to prove her underlying claim of discrimination to succeed on a retaliation claim. Instead, she must only show that she had a "reasonable good faith belief that the discrimination existed." *Id.* In order to establish the third prong of this test, a plaintiff "need only show that the protected activity and the adverse action are not completely

17

unrelated." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (internal quotation marks and citation omitted).

Plaintiff engaged in protected activity by filing her EEOC charges on February 20, 2004, and March 19, 2004. Furthermore, Plaintiff suffered an adverse employment action when she was terminated on August 9, 2004. To the extent that Plaintiff claims that employment actions by BCBS other than her termination constitute actionable retaliation, the Court rejects these claims because Plaintiff has failed to produce any evidence showing a causal connection between them and her protected activity.[7]

The thrust of Plaintiff's claim for retaliation is Defendant's termination of her employment. The issue to be resolved for purposes of summary judgment is whether sufficient evidence exists from which a reasonable jury could conclude that a causal connection exists between her protected activity (complaints of discrimination and the filing of her EEOC charges) and her discharge. The Court finds that a genuine issue of material fact exists as to whether there is causal connection. Plaintiff has shown that BCBS knew about her complaints of discrimination and the filing of her EEOC charges and that BCBS terminated Plaintiff in relatively close proximity to those complaints. *See Holifield*, 115 F.3d at 1566 (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993); *Weaver v. Casa*

---

[7]Moreover, as previously explained, the Court has serious doubts as to whether this alleged "harassment" even rises to the level of an adverse employment action.

*Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir. 1991).   Therefore, Plaintiff has established a *prima facie* case of discriminatory discharge.

This does not end the inquiry.   BCBS can avoid liability if it articulates a legitimate, non-discriminatory reason for Plaintiff's termination and if Plaintiff is unable to show that reason is pretextual.   BCBS has carried its burden by providing evidence that Yim considered Plaintiff's overall work performance to be poor and that Plaintiff created a serious outage, all of which justified her termination.   The burden then shifts to Plaintiff to show that Defendant's reasons for her discharge were pretextual.   The pretext determination does not depend upon "the wisdom or accuracy of [the employer's] conclusion that [the plaintiff] was an unsatisfactory employee . . . .   We are not in the business of adjudging whether employment decisions are prudent or fair.   Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (internal quotation marks and citations omitted).

Plaintiff's evidence of pretext is not sufficient to defeat summary judgment.   Plaintiff argues that her previous supervisors thought that she "met expectations."   Plaintiff suggests that just because her previous supervisors considered her previous performance to meet expectations, that Yim's evaluation to the contrary must have been motivated by discrimination.   The Court rejects this suggestion.

"Different supervisors may impose different standards of behavior." *Rojas*, 285 F.3d at 1343 (citation omitted). Yim imposed her standards across the board. Ironically, she also fired for poor performance a white male employee, Malinowski, who was likely the most comparable employee to Plaintiff in the entire organization.

Plaintiff also argues that she did not cause the outage that Yim stated contributed to Plaintiff's discharge. Plaintiff points to this dispute as evidence of pretext. Even if Plaintiff believes that she did not cause the outage, BCBS has presented evidence that it honestly believed that she did create the outage. In the pretext context, the inquiry "centers upon employer's beliefs, and not the employee's own perceptions of [her] performance." *Holifield*, 115 F.3d at 1565; *see also Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998). Plaintiff has simply failed to present sufficient evidence to create a genuine issue of material fact on the question of pretext. Summary judgment is therefore required in favor of Defendant on Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's federal law claims. Furthermore, having abandoned her state law claim for the intentional infliction of emotional distress, Plaintiff's state law claim is also subject to summary judgment. Accordingly, Defendant's Motion for Summary Judgment (Doc. 22) is granted in its entirety.

20

IT IS SO ORDERED, this 6th day of January, 2006.


                                        S/Clay D. Land
                                          CLAY D. LAND
                                        UNITED STATES DISTRICT JUDGE